#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 07-CR-0040-02 |
| | : | |
| vs. | : | |
| | : | CIVIL ACTION |
| CONCETTA JACKSON | : | NO. 11-CV-3343 |

### M E M O R A N D U M

**STENGEL, J.**                                                             June  8, 2012

On July 24, 2008, a federal grand jury returned a fifty-six count superceding indictment charging Concetta Jackson and her two co-defendants with use of a minor to produce visual depictions of sexually explicit conduct in violation of 18 U.S.C. § 2251(a)(1).[1]  Specifically, Miss Jackson was charged in thirty of those counts.  On September 2, 2008, pursuant to a carefully negotiated written plea agreement with the government, Miss Jackson entered a guilty plea to Count 46s.  She agreed that, with limited exceptions, she would neither appeal nor present any collateral challenge to her conviction or sentence.  Upon the government's motion, I dismissed the remaining counts against Miss Jackson at sentencing.  Miss Jackson then filed an appeal which she claimed was not barred by the waiver due to a "clear" violation of the *Ex Post Facto* Clause[2]

---

[1] One of these counts charged only Co-Defendant John Worman with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

[2] The Constitution of the United States, Article 1, Section 9, prohibits the Legislature of the United States from passing any *ex post facto* law; and, in Section 10, lays several restrictions on the authority of the Legislatures of the several states; and, among them, "that no state shall pass any *ex post facto* law."  Calder v. Bull, 3 U.S. 386, 390 (1798).  The "words and intent" of the *Ex Post Facto* Clause encompass, *inter alia*, "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed."  Id.

amounting to a miscarriage of justice.  She specifically requested that the Third Circuit not abrogate her plea agreement with the government, asserting that her agreement remained "valid and enforceable."  She instead chose to attack only one provision of that agreement, the sentencing guidelines that were used to calculate her sentencing range.  The Third Circuit Court of Appeals rejected that argument, granted the government's Motion to Enforce the Appellate Waiver, and affirmed the judgment of this court.

Again, notwithstanding her waiver, Miss Jackson has collaterally challenged her sentence in the form of a motion to vacate, set aside, or correct it pursuant to 28 U.S.C. § 2255.  The claim she brings here is similar to the claim brought on appeal and rejected by the Third Circuit except this one is couched as an ineffective assistance of counsel claim.  She alleges that trial counsel was ineffective for failing to object to the application of a version of the Sentencing Guidelines which was not yet in effect during the timeframe of the conduct charged in Count 46s.  In response, the government filed a motion to dismiss the petition, arguing that the waiver should be upheld and her petition dismissed.  For the following reasons, I will grant the government's motion in its entirety, and dismiss the petition.

I. BACKGROUND

In February 2006, detectives from the Delaware County District Attorney's Office executed search warrants at the home that Co-Defendant Worman shared with his mother in Colwyn, and at the home he shared with Defendant Jackson in Collingdale, Pennsylvania.  The police seized numerous computers, hard drives, DVD's, CD's,

Polaroid pictures and VHS tapes that had been hidden throughout both of the houses and in Mr. Worman's vehicle. A subsequent forensics examination of the evidence revealed 1.2 million images stored on the computers and hard drives, including hundreds of video clips and images that depict at least four minors as they used the bathroom, undressed, and showered at the Collingdale house he shared with Miss Jackson. Investigators learned that Mr. Worman had installed a video camera in the bathroom wall of that home, and that Miss Jackson permitted him to film the children in exchange for him paying the rent on the house.

The investigation also revealed that Miss Jackson advertised her babysitting services, and took in children that she babysat in her home. She then permitted Mr. Worman to take the female infants upstairs to their bedroom, outside of her supervision. Investigators found images of Mr. Worman having sexual contact with these infants, one as young as three months, saved on Mr. Worman's computers. Miss Jackson admitted to the police that she had turned supervision of the female infants that had been entrusted to her care over to Mr. Worman. This was done at a time when she was well aware of Mr. Worman's involvement with children and with the taping of the other four minors in this case.

## II. STANDARD OF REVIEW

Miss Jackson is entitled to relief only if her custody or sentence violates federal law or the Constitution of the United States. Title 28 of the United States Code, Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Section 2255 permits *habeas* relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice."  United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004)(citing United States v. Addonizio, 442 U.S. 178, 184 (1979)).  In considering this motion, the court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).

A district court is given discretion in determining whether to hold an evidentiary hearing on a *habeas* petition under Section 2255.  See Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  In exercising that discretion, the court must first determine whether the *habeas* petitioner's claims, if proven, would entitle her to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations.  See Gov't of the V. I. v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994).  Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'"  United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)); see also Forte, 865 F.2d at 62.

I note that Miss Jackson filed this petition *pro se*. *Pro se* pleadings are traditionally construed quite liberally. However, a *pro se* petitioner is not excused from the duty to prove a "set of facts in support of her claim which would entitle her to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972).

## III. DISCUSSION

On September 2, 2008, pursuant to a written plea agreement with the government, Miss Jackson pled guilty to Count Forty-Six of the superseding indictment which charged her with use of a minor to produce depictions of sexually explicit conduct in violation of 18 U.S.C. § 2251(a)(1), and with aiding and abetting in violation of 18 U.S.C. § 2.[3] This charge arose from her participation and role in assisting Mr. Worman in the manufacturing of child pornography, i.e., the videotaping of him sexually abusing "Ka.B.," a female infant of just 10 months of age. As part of that agreement, Miss Jackson agreed that, with limited exceptions, she would neither appeal nor present any collateral challenge to her conviction or sentence. Paragraph Eight of the plea agreement describes these waivers:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or ***collaterally attack*** the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, ***28 U.S.C. § 2255***, or any other

---

[3] If this case had gone to trial, the government would have had to prove the following elements beyond a reasonable doubt: (1) the defendant used, persuaded, induced, enticed, or coerced any minor, or aided and abetted the use, persuasion, inducement, enticement, or coercion of any minor; (2) to engage in any sexually explicit conduct; (3) for the purpose of producing any visual depiction of such conduct; and (4) that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce. See 18 U.S.C. § 2251(a)(1), and § 2.

> provision of law.  This waiver is not intended to bar the
> assertion of constitutional claims that the relevant case law
> holds cannot be waived.

<u>See</u> Guilty Plea Agreement (Document #138)(emphasis added).  Further, the same paragraph sets forth the limited exceptions which would permit Miss Jackson to appeal and/or collaterally attack her conviction and sentence:

> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of her sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph,ced the defendant may file a direct appeal but may raise only claims that:
>
>> (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 5 above;
>>
>> (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or
>>
>> (3) the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

<u>See</u> Guilty Plea Agreement (Document #138).

In our circuit, waivers of the right to appeal and the right to collaterally attack are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice.  <u>United States v. Ahmad</u>, 325 Fed. Appx. 149 (3d Cir. April 28, 2009) (citing <u>United States v. Khattak</u>, 273 F.3d 557, 558 (3d Cir. 2001)).  These waivers should be strictly construed.  <u>Khattak</u>, 273 F.3d at 562.  In determining whether a

defendant's waiver was knowing and voluntary, the role of the sentencing judge in conducting a colloquy under Rule 11 of the Federal Rules of Criminal Procedure is critical. Id. at 563.  Under Rule 11, before accepting a plea of guilty, the court must address the defendant personally and determine that the defendant understands the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence.

At the change of plea hearing, I colloquied Miss Jackson regarding the waiver of various rights including her right to appeal and/or collaterally attack her conviction and sentence.  See N.T. 09/02/08 at 20-22.  In addition, prior to the colloquy, the government outlined these waivers, which the defense acknowledged was an accurate summary of the defendant's plea agreement.  Id. at 10-11.  Miss Jackson acknowledged that she understood the limitations placed on these rights by virtue of her pleading guilty.  Id. at 20-22.  Miss Jackson also acknowledged that she understood the maximum penalties that she was facing by pleading guilty.  Id. at 13-14.  Counsel for Miss Jackson indicated that he had had enough time before the hearing to explain to his client the ramifications of pleading guilty, and that he felt his client understood those ramifications, including the rights she would be waiving.  Id. at 27.  Before accepting the plea, I found that Miss Jackson was alert and competent to enter a guilty plea, and that the plea was knowing and voluntary.  Id. at 28.  Nothing in her § 2255 petition changes those findings.

Furthermore, Miss Jackson has not made a showing that enforcing the waiver of her right to collaterally attack her conviction and sentence would work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008); see also United States v.

Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008) ("Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it.")   The Third Circuit Court of Appeals has chosen not to identify specific situations in which enforcement of a waiver provision would work a miscarriage of justice and has instead endorsed the case-by-case approach established in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001).   See Khattak, 273 F.3d at 563.   In Teeter, the First Circuit Court of Appeals stated:

> In charting this course, we recognize that the term "miscarriage of justice" is more a concept than a constant. Nevertheless, some of the considerations come readily to mind: the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.   Other considerations doubtless will suggest themselves in specific cases.

Teeter, 257 F.3d at 26.   It is apparent, then, that the "miscarriage of justice" exception is quite narrow.   See United States v. Jackson, 523 F.3d 234, 244 (3d Cir. 2008) ("it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice.")   It "will be applied sparingly and without undue generosity," United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Teeter, 257 F.3d at 26), only where "manifest injustice" would result

by enforcing the appellate waiver, United States v. Gwinnett, 483 F.3d 200, 206 (3d Cir. 2007). Simply because an issue is meritorious is not sufficient. Adopting the view of other circuit courts, the Third Circuit stated:

> [B]y waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits. As the Court of Appeals for the Eleventh Circuit explained: A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues - indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous . . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded. [United States v. Howie, 166 F.3d 1166, 1169 (11th Cir. 1999)]; see also United States v. Wenger, 58 F.3d 280, 282 (7th Cir.1995) ("Defendants who appeal from sentences following plea agreements always point to unanticipated and unwelcome developments. . . . To say that a waiver of appeal is effective if and only if the defendant lacks grounds . . . is to say that waivers will not be honored.")

Khattak, 273 F.3d at 561-562; see also United States v. Lockett, 406 F.3d 207, 212-214 (3d Cir. 2005) (meritorious sentencing argument under Booker is not a basis for the defendant to evade his waiver); United States v. Perez, 514 2 F.3d 296, 298 (3d Cir. 2007) (enforcing waiver of right to appeal restitution Order, as that was a term of sentencing regarding which the defendant waived the right to appeal); United States v. Schweitzer, 454 F.3d 197, 205 (3d Cir. 2006) (applying waiver to preclude appeal of challenge to allegations in indictment). In the context of collateral review, where proof of a "miscarriage of justice" may overcome procedural and other bars to relief, the Supreme Court has consistently

described a "miscarriage of justice" in very narrow terms as "the conviction of one who is actually innocent." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986).

Here, there was no miscarriage of justice. Miss Jackson claims that trial counsel was ineffective for not objecting to the use of two enhancements[4] that became effective in November 2004, when the conduct to which she pleaded guilty occurred in early 2004. This claim is meritless. First, although dismissed as a result of a beneficial plea agreement, the conduct charged in twenty-nine of the counts spanned the years from 2004 through 2006, well after that version of the sentencing guidelines had gone into effect.

Second, the record reflects that defense counsel vigorously argued against the application of those enhancements in his sentencing memorandum and at sentencing. See N.T. 09/09/09 at 51-56. At the sentencing hearing on September 9, 2009, after considering the excellent arguments of the government and defense counsel, I determined that Miss Jackson's adjusted offense level was 45, with a criminal history category of 1 which yielded a guideline range of life imprisonment, a sentence prohibited by a statutory maximum of 360 months' imprisonment. Id. at 58. After consideration of all of the relevant factors, I imposed a sentence of 300 months, which was less than the advisory guideline range, and less than the statutory maximum sentence. Id. at 115. To say that defense counsel was ineffective for not objecting to the enhancements is factually

---

[4] The first enhancement involved a four level increase of the base offense level because the offense involved (i) the commission of a sexual act; and (ii) conduct described in 18 U.S.C. § 2241(a) or (b). See Sentencing Guidelines § 2G2.1(b)(2)(B). The second enhancement increased the base offense level by four levels because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. Id. at § 2G2.1(b)(4). After hearing the arguments of counsel, I determined that both of these enhancements were appropriate considering the details of this case.

inaccurate.

Third, regardless whether a different offense level should have been calculated because of the *Ex Post Facto* Clause, I applied the sentencing guidelines as advisory, as is evident in the imposition of a sentence outside the advisory range.   Miss Jackson overlooks a critical point in her claim, i.e., this calculus changed entirely with the Supreme Court's opinion in United States v. Booker, 543 U.S. 220 (2005), which determined that the sentencing guidelines could no longer be applied as mandatory, but merely stand as advisory guidance for courts when considering appropriate sentencing.   Thus, as the government argued on appeal, a guideline amendment no longer presents an *ex post facto* issue, as such an amendment does not alter the punishment to which a prior offender is subject, as the guidelines themselves are merely advisory.   I also note that if Miss Jackson had presented a timely objection to the guideline calculation based on the *Ex Post Facto* Clause at the sentencing hearing, instead of stipulating to the application of the 2007 manual in the Guilty Plea Agreement, the government could have chosen to proceed to trial or negotiate a different plea agreement.

Finally, Miss Jackson argued on appeal that enforcement of her appellate waiver would amount to a miscarriage of justice because her case presents a clear and obvious *Ex Post Facto* Clause violation, establishing patent constitutional error.   The Third Circuit Court of Appeals rejected that argument and enforced the appellate waiver.   Now, she claims that her trial counsel was ineffective for failing to raise that alleged violation. Failure to raise a potential claim which the Third Circuit had already found to be meritless

cannot be ineffective assistance of counsel.

In conclusion, upon the denial of a § 2255 motion, an appeal to the Court of Appeals is not permitted unless the petitioner obtains a certificate of appealability. 28 U.S.C. § 2253. The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to present a "substantial showing of a denial of any constitutional right" such that an appeal is justified, the mere allegation of a constitutional wrong is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal. Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996). To establish the required showing, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000). The claim must be constitutional in nature. There may be no certificate of appealability for an issue which presents only a statutory or sentencing guidelines question. United States v. Cepero, 224 F.3d 256, 262-268 (3d Cir. 2000). Miss. Jackson has not made the required showing of a denial of a constitutional right. I will deny the issuance of a certificate of appealability.

An appropriate Order follows.