IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION<br>NO.  07-40-2 |
| v. | |
| CONCETTA JACKSON | |

## **MEMORANDUM**

Defendant Concetta Jackson moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of the dangers posed by the COVID-19 pandemic.  For the reasons that follow, her motion will be denied.

### I.     BACKGROUND

Concetta Jackson is currently serving a 300-month (25 year) sentence for aiding her then-boyfriend, John Worman, in sexually abusing minor children in her home from 2003 to 2006.  The specific details of the sexual exploitation are horrific and, as they are not relevant to this motion, will not be recounted.  As for her role, Jackson allowed Worman to install a camera in her bathroom and to film her minor children, which he did for three years.  She also advertised her babysitting services, took in infants to her home to babysit, and then tacitly allowed Worman to sexually abuse them and videotape the abuse.

On September 2, 2008, Jackson pled guilty to aiding and abetting the use of a minor—here, a 10-month-old child—to produce visual depictions of sexually explicit conduct in violation of 18 U.S.C. § 2251(a) and (e).  On September 9, 2009, she was sentenced to 300 months' incarceration, lifetime supervised release, a prohibition against having contact with any victim named in the indictment or their families, and other penalties.  Jackson is serving her sentence at FCI Danbury, with an anticipated release date of June 28, 2031.  Including time

credit for good conduct, she has served a total of 181 months or approximately 60% of her sentence.

Jackson submitted a request for compassionate release to the warden in May 2020, which was denied. On March 12, 2021, through her attorney, she filed the instant motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to her underlying medical conditions— Diabetes Mellitus II, obesity, asthma, hypothyroidism, hypertension, osteoporosis, and chronic rhinitis—and in light of the COVID-19 pandemic. The Government opposes the motion.

## II.     DISCUSSION

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons." *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019); *see* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term of imprisonment. . . ."). Specifically, provided the defendant has exhausted his administrative remedies, Section 3582(c) permits a district court to reduce a defendant's sentence "after considering the factors set forth in section [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's applicable policy statement essentially mirrors this language, adding that a sentence reduction may be granted only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1)(A)(2).

Because Jackson has exhausted her administrative remedies by unsuccessfully seeking

compassionate release from the warden of FCI Danbury,[1] her sentence may be reduced if: 1) extraordinary and compelling circumstances warrant such a reduction, 2) she is not a danger to the safety of another person or to the community; and, 3) release is appropriate in consideration the relevant factors set forth in Section 3553(a).

      In this case, the buck stops at step one as Jackson cannot demonstrate "extraordinary and compelling" circumstances warranting her release.  While Section 3582 does not define "extraordinary and compelling" circumstances that warrant relief, the Sentencing Commission's policy statement elaborates on the term in an application note.  *See* U.S.S.G. § 1B1.13, cmt. n.1(A)-(D).  According to U.S.S.G. § 1B1.13, a defendant's serious physical or medical condition is "extraordinary and compelling" if it "substantially diminishes [defendant's ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  *Id.*  It is the defendant's burden "to prove extraordinary and compelling reasons exist."  *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020).

      Jackson's medical records demonstrate that she is 58 years old and suffers from, *inter alia*, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol.  As the Government acknowledges, type II diabetes and obesity are underlying medical conditions that the Center for Disease Control (CDC) has concluded increase the risk of severe illness in the event of a COVID-19 infection.  *See* Center for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 15, 2021).  Jackson has a body mass index (BMI) of 31.2, which the CDC classifies as obese.  *Id.*  Jackson's risk is

---

[1] *See* 18 U.S.C § 3582(c)(1)(A) (explaining that a defendant may bring a motion for compassionate release pursuant to this Act after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility).

compounded by her age. According to statistics published by the CDC, Jackson's age places her at a 25-times higher risk of hospitalization and 400-times higher risk of death than those in the 5-17-year-old comparison group. *See* Center for Disease Control, *Covid-19 Hospitalization and Death by Age,* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated Feb. 18, 2021). Under normal circumstances, Jackson's age and medical condition would present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" in light of the COVID-19 pandemic. *See* U.S.S.G. § 1B1.13 n.1.

However, Jackson was offered the Moderna COVID-19 vaccine on January 6, 2021 and elected not to be vaccinated. Thus it seems that Jackson has voluntarily declined to "provide self-care" and mitigate her risk of a severe COVID-19 infection. The FDA approved the Moderna vaccine for use after extensive testing, concluding that it is 95% effective in preventing infection and virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19. *See* Food and Drug Administration, *Emergency Use Authorization*, https://www.fda.gov/media/144673/download (Dec. 18, 2020). There is no apparent medical reason that Jackson should not receive the vaccine. It was offered to her by FCI Danbury's medical staff. As her medical records note, she merely "refused." Where Jackson bears the burden of demonstrating her entitlement to relief, the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release.[2] *See, e.g., United States v. Jackson*, 2021

---

[2] Because Jackson fails to demonstrate an extraordinary and compelling justification for her release, there is no need to consider the factors under § 3553(a). *See* 18 U.S.C. § 3582(c) (directing a court to consider the Section 3553(a) factors before reducing a term of imprisonment "*if* it finds that extraordinary and compelling reasons warrant such reduction" (emphasis added)).

WL 806366, at *1-2 (D. Minn. Mar. 3, 2021) (explaining that while a petitioner who declined the vaccine is "within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk."); *United States v. McBride*, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (explaining, where petitioner rejected the COVID-19 vaccine, that the "refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison"); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (denying relief where petitioner "declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically" by refusing the vaccine twice); *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (concluding that petitioner's circumstances were not "extraordinary and compelling" where he refused the COVID-19 vaccine).

### III. CONCLUSION

For the foregoing reasons, Jackson's motion will be denied. An appropriate order follows.

March 25, 2021                                         BY THE COURT:

                                                       */s/ Wendy Beetlestone*
                                                       _____
                                                       **WENDY BEETLESTONE, J.**