**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **v.** | |
| **CONCETTA JACKSON** | **NO.  07-40-2** |

**MEMORANDUM OPINION**

For a third time, Defendant Concetta Jackson, proceeding *pro se*, moves for compassionate release pursuant to the First Step Act, 18 U.S.C. §§ 3582(c)(1)(A)(i).  For the reasons set forth below, her Motion will be denied.

**I.    FACTUAL BACKGROUND**

Jackson is currently serving a 300-month (25 year) sentence for aiding her then-boyfriend, John Worman, in sexually abusing minor children in her home from 2003 to 2006.  The specific details of the sexual exploitation are horrific and, as they are not relevant to this motion, will not be recounted.  As for her role, Jackson allowed Worman to install a camera in her bathroom and to film her minor children, which he did for three years.  She also advertised her babysitting services, took in infants to her home to babysit, and then tacitly allowed Worman to sexually abuse them and videotape the abuse.  On September 2, 2008, Jackson pled guilty to aiding and abetting the use of a minor— here, a 10-month-old child—to produce visual depictions of sexually explicit conduct in violation of 18 U.S.C. § 2251(a) and (e).  On September 9, 2009, she was sentenced to 300 months' incarceration, lifetime supervised release, a prohibition against having contact with any victim named in the indictment or their families, and other penalties.

1

Jackson is serving her sentence at FCI Danbury, with an anticipated release date of June 28, 2031.  Including time credit for good conduct, she has served a total of 218 months or approximately 73% of her sentence.  Jackson has twice before filed motions for compassionate release to no avail.  She now moves again, predicating her motion on her Chronic Obstructive Pulmonary Disease ("COPD") diagnosis, a condition which sometimes makes it difficult for her to breathe.  The Government opposes the motion.

## II.    DISCUSSION

The compassionate release statute permits a court to modify an imposed term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable," only "if it finds that [] extraordinary and compelling reasons warrant such a reduction," and if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  So "a motion for compassionate release raises three questions: (1) whether there are 'extraordinary and compelling reasons' for modifying an imposed term of imprisonment; (2) whether a new sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a); and, (3) whether a new sentence would be consistent with any applicable policy statements."  *United States v. Carter*, 711 F. Supp.3d 428, 434-35 (E.D. Pa. 2024) (citing *United States v. Pawlowksi*, 967 F.3d 327, 329 (3d Cir. 2020)), *aff'd*, 2024 WL 5339852 (3d Cir. Dec. 2, 2024).

Here, as articulated in this Court's prior opinion regarding one of Jackson's earlier Motions for Compassionate Release: "the buck stops at step one as Jackson cannot demonstrate 'extraordinary and compelling' circumstances warranting her release."  *United States v. Jackson*, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021).  Congress delegated to the Sentencing Commission the power to promulgate "general policy statements regarding the sentencing

modification provisions in" 18 U.S.C. § 3582(c)(1)(A), which "shall describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). Generally, the Commission's policy statements are binding on courts. *Cf. United States v. Rutherford*, 120 F.4th 360, 375 (3d Cir. 2024) (citing *United States v. Berberena*, 694 F.3d 514, 522 (3d Cir. 2012)).

Jackson cites one policy statement in her Motion, Section 1B1.13(b)(1). Specifically, she cites Section 1B1.13(b)(1)(B) and (C), which state that extraordinary and compelling reasons for a reduction in sentence exit when:

> (B) The defendant is--
>
>> (i) suffering from a serious physical or medical condition,
>>
>> (ii) suffering from a serious functional or cognitive impairment, or
>>
>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>>
>>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(B)-(C).

In Jackson's Motion, she contends that she has weekly COPD exacerbations, during which she cannot breathe and her chest becomes tight. She additionally contends that the medical professionals assigned to treat her COPD have refused to provide a different inhaler to her, which she purportedly needs because her current inhaler does not work. She finally maintains that the Physician Assistant ("PA") treating her will not send her to a lung specialist for further treatment.

Jackson's contentions are belied by her medical records, which the Government has supplied. Based on those records, throughout May and June 2025, Jackson reported that her COPD flared a handful of times. In one instance, she was promptly treated by prison officials, but showed no improvement, and so was transferred to an outside emergency room, where she did improve. In another instance, she was proscribed an inhaler after reporting some difficulty breathing, which she reported provided her "some relief." A few weeks later, she again complained, but notified the treating medical professionals that she had not been using her prescribed inhaler. Because of her age and previous failure to use her inhaler, the treating professional requested a "triple therapy" inhaler—a more advanced form of treatment—which the Bureau of Prisons approved.

After the new inhaler was prescribed in early June, Jackson's episodes appear to have ceased. In mid-June, she again reported shortness of breath, but upon examination, the treating professional determined that she "present[ed] with no visible signs of respiratory distress." And finally, ten days before she filed her Motion for Compassionate Release, during a routine check-up, she reported that "her inhalants have been very beneficial." In sum, her COPD is well-controlled.

To establish an "extraordinary and compelling" circumstance warranting release under Section 1B.13(b)(1), Jackson needed to establish that she was "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13(b)(1)(B), or that she was "suffering from a medical condition that requires long-term or specialized medical care that is not being provided," U.S.S.G. § 1B1.13(b)(1)(C). Well-controlled COPD (and as Jackson's medical records reveal, hers is)

rarely meets that high bar.  *United States v. Russo*, 2021 WL 5792696, at *4 (E.D. Pa. Dec. 7, 2021) (holding that, even in the face of COVID-19 ravaging the nation, prisoner was not entitled to relief despite his "asthma, anxiety disorder, obstructive sleep apnea, [and] COPD"); *United States v. Limehouse*, 2021 WL 1387756, at *5-7 (E.D. Pa. Apr. 13, 2021) (denying prisoner's (who had COPD and asthma), motion for compassionate release, because the prisoner "is stable and . . . appears to have received appropriate medical care in a timely manner throughout his incarceration," even though in the face of COVID-19 it made the decision "a close case").  And finally, given Jackson's reports to medical staff that she has not been using her inhaler in each instance of her COPD flare-ups, such failure "negates" what might have otherwise been "compelling medical reasons for release."  *See Jackson*, 2021 WL 1145903, at *2 (noting the same regarding Jackson's declination of the COVID-19 vaccine).

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____

**WENDY BEETLESTONE, C.J.**